IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIORA MAYER | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case 3:11-cv-00669-MJR -DGW |
| | ) |
| CONNELLY PETERSON, an Illinois | ) |
| Company; SHEARER SAMPSON & | ) |
| ASSOCIATES, INC., an Illinois | ) |
| Corporation; WEST COAST STOCK | ) |
| TRANSFER, INC, a California | ) |
| Corporation; Brett Hanson, individually; | ) |
| and Vince Carter, individually; Brian Dell, | ) |
| individually. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Liora Mayer ("Plaintiff" or "Mayer"), complains against Defendants West Coast Stock Transfer, Inc. ("West Coast"), Connelly Peterson Ltd. ("Connelly"), formerly known as Shearer Sampson & Associates, Inc ("Shearer"), Brett Hanson ("Hanson"), Vince Carter ("Carter"), and Brian Dell ("Dell") as follows:

### INTRODUCTION

1.  Pursuant to a Purchase Agreement (collectively with all other Share Purchase Agreements executed by Ms. Mayer referenced herein, the "Purchase Agreement") executed on May 15, 2011, Connelly, formerly Shearer, purchased from Plaintiff Mayer shares of stock in World Film, Inc. ("WFI") for $275,000 ("Purchase Funds"). In connection with the Purchase Agreement an escrow was created to safeguard the Purchase Funds and the WFI stock pending the closing of the transaction. Defendant West Coast served as the escrow agent, and a Stock

Escrow Agreement was entered into among Mayer, Connelly and West Coast (the "Escrow Agreement"). Brett Hanson, West Coast's President, executed the Escrow Agreement on behalf of West Coast. To Plaintiff Mayer's surprise, she was instructed by West Coast and did wire certain standard fees related to the share transfer owed to West Coast, first to an off-shore account in Belize and later to an off-shore account in Costa Rica. Over one month ago, on June 27, 2011, the transaction closed and Plaintiff Mayer was contractually due to receive the Purchase Funds by wire – as set forth in the Purchase Agreement – immediately upon closing. The funds never arrived, and despite numerous demands for the release of the funds, at the filing of this Complaint, the funds due have not been paid to Mayer.

2. When Plaintiff Mayer and her attorneys inquired in the preceding weeks as to why the Purchase Funds had not been sent, they were given little information and after multiple inquiries were informed that the Purchase Funds were "missing." Subsequently, Plaintiff Mayer and her attorneys were informed by West Coast that the funds were not in fact missing, and that they would be wired promptly. Despite these promises, no funds have been received. Plaintiff Mayer believes that West Coast, by and through Hanson and other employees, have willfully and wrongfully withheld the Purchase Funds in breach of the Escrow Agreement and their fiducuiary duties. She brings this action for immediate payment of the misappropriated Purchase Funds from the Defendants and for such other relief as this Court deems appropriate.

**PARTIES**

3. Plaintiff Liora Mayer is a citizen of the State of Isreal who resides at 17 Azari St., Tel Aviv 69693, Israel.

4.      Defendant West Coast Stock Transfer, Inc. is a corporation incorporated in the State of California, with its principal place of business at San Diego in the State of California.

5.      Defendant Brett Hanson, upon information and belief, is a citizen of the State of California and is the current president of West Coast.

6.      Defendant Vince Carter, upon information and belief, is a citizen of the State of California, and works as a representative of West Coast.

7.      Defendant Brian Dell, upon information and belief, is a citizen of the State of Illinois and is a representative of Connelly Peterson.

8.      Upon information and belief Dell Hanson and Carter operate under an assumed name, Connelly Peterson, Ltd., formerly known as Shearer Sampson & Associates, which they have represented is incorporated in the State of Illinois with a principal place of business at Chicago.  Upon information and belief, Connelly Peterson was previously known as Shearer Sampson.

9.      Plaintiff believes that Hanson and Carter have and continue to use West Coast as a shell, instrumentality and/or conduit, to conceal and misrepresent their true interests and to procure payments of cash from Plaintiff, and have disregarded legal formalities and failed to maintain arms length relationships.  As such, there exists such a unity of interest in ownership that the separate personalities of Hanson, Carter and West Coast (collectively "West Coast Defendants") do not exist.

10.     Plaintiff believes that at all times herein mentioned, each Defendant was acting as agent, employee, servant, partner, joint venturer and/or successor-in-interest of the remaining Defendants, and all the acts complained of herein were done within the course and scope of said agency, employment, servitude, partnership, joint venture, or succession and that all the acts

alleged herein committed by each Defendant were ratified and approved by the remaining Defendants and/or done with the knowledge, consent and permission of the other Defendants.

## JURISDICTION AND VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this controversy is between citizens of a state and a citizen or subject of a foreign state, and the sum or value of the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391 (c) because the parties have agreed to exclusive venue in the Southern District of Illinois for litigation of disputes under the Stock Escrow Agreement dated February 17, 2011 by and between Mayer, West Coast and Connelly.

13. Specifically, Paragraph 8.1 states that:

> Governing Law. This Agreement shall for all purposes be deemed to be made under and shall be construed in accordance with the laws of the State of Illinois. Each of the parties hereby agrees that any action, proceeding or claim against it arising out of or relating in any way to this Agreement shall be brought and enforced in the courts of the State of Illinois or the United States District Court for the Southern District of Illinois, and irrevocably submits to such jurisdiction, which jurisdiction shall be exclusive. Each of the parties hereby waives any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum.

A true and correct copy of the Stock Escrow Agreement is attached hereto as Exhibit A.

## FACTUAL BACKGROUND

14.     On or about February 16, 2011, Shearer agreed to purchase Plaintiff's shares of WFI stock from Mayer. An initial purchase agreement was entered into between Plaintiff and Shearer memorializing the sale of Plaintiff's 14,000 shares of WFI stock to Shearer.

15.     On or about February, 2011, Shearer hired West Coast to serve as the Escrow Agent to hold the sale shares and the Purchase Funds until disbursement at the closing of the transaction.

16.     On or about February 17, 2011, Shearer, Plaintiff and West Coast Defendants executed the Stock Escrow Agreement whereby West Coast agreed to hold the Purchase Funds and shares in an escrow account until the Closing Date of May 15, 2011.  *See* Exhibit A.

17.     Under the terms of the Escrow Agreement, West Coast was obligated to disburse the Purchase Funds to Mayer immediately upon the close of the transaction. *See Id*.

18.     Paragraph 1 of the Escrow Agreement provides:

> "The Agent and the Shareholder hereby appoint the Escrow Agent to act in accordance with and subject to the terms of this Agreement and the Escrow Agent hereby accepts such appointment and agrees to act in accordance with and subject to such terms."

19.     Paragraph 5 of the Escrow Agreement provides that "the Escrow Agent shall hold the Purchase Funds until May 15th, 2011 (the "Closing Date") on which date it shall deliver the Purchase Funds to the Shareholder pursuant to the SPA."

20.     Paragraph 7.4 of the Escrow Agreement provides that Connelly "shall do or cause to be done such further acts as the Escrow Agent shall reasonably request to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith."

21. The Escrow Agreement is governed by the laws of the State of Illinois. *See* Exhibit A at ¶ 8.1.

22. As the Escrow Agent, West Coast owed fiduciary duties to Plaintiff.

23. On or about March 10, 2011, it was discovered that Mayer owned an additional 11,000 shares of WFI stock. A second purchase agreement was executed to confirm Shearer's purchase of Plaintiff's additional stock.

24. At that point, the parties decided to combine the previous agreements and execute one single Purchase Agreement to confirm its purchase of all of Plaintiff's 25,000 shares of WFI stock. A copy of the Purchase Agreement is attached hereto as Exhibit B.

25. Pursuant to the Purchase Agreement, the purchase price for Mayer's 25,000 shares would be $275,000, to be paid from an escrow account upon closing. *See* Exhibit B, Section 2.2.

26. At some time thereafter, for reasons unknown to Plaintiff, Shearer became known as Connelly. On multiple occasions, through his conduct and representations, Dell confirmed on behalf of Connelly that Connelly had taken over Shearer's interests in the transaction.

27. On or about June 2011, Plaintiff fulfilled her obligations under the Escrow and Purchase Agreement by depositing her 25,000 WFI shares in the Escrow Account held by West Coast.

28. On the Closing Date, which occurred on or about June 27, 2011, West Coast failed and refused to disburse the funds to Plaintiff as required pursuant to the Escrow Agreement.

29. Plaintiff demanded release of the Purchase Funds.

30. Through counsel, Plaintiff called and emailed the West Coast Defendants on numerous occasions demanding that the Purchase Funds be released immediately.

31. In response, Hanson and Carter acknowledged that they owed Plaintiff the Purchase Funds, represented that Purchase Funds had been sent by wire transfer.

32. Hanson and Carter further maintained that the Purchase Funds were simply "missing" or "stuck in clearing," but provided no supporting documentation or information relating to the whereabouts of the Purchase Funds.

33. Despite Mayer's repeated and continuous demands, West Coast has continued to fail to release the Purchase Funds to Plaintiff.

34. In a final effort to obtain compliance with Escrow Agreement, on July 27, 2011, counsel for Plaintiff sent correspondence to the West Coast Defendants demanding the immediate release of the Purchase Funds. A true and correct copy of the Demand Notice is attached hereto as Exhibit C.

35. The Demand Notice states, in pertinent part, "[c]onsistent with the terms of the Escrow Agreement, DLA Piper LLP (US) hereby demands that the escrow agent release funds owed pursuant to the Escrow Agreement."

36. Because more than a month had passed since the Closing Date, the Demand Notice required the "funds be released immediately."

37. Even though the Escrow Agreement's disbursement provisions are self-executing, the Demand Notice served as a final written notification, demand and instruction of the Escrow Agreement's terms of distribution.

38. On July 28, 2011, Carter responded to the Demand Notice by stating that "Ms. Liora Mayer's funds will be released Friday July 29th. We will also provide details of her

transaction and documentation on Monday or Tuesday latest. There is nothing further our company can do to advance this." A true and correct copy of West Coast's email exchange with Mayer's attorney is attached hereto as Exhibit D.

39. In response to counsel's inquiries about the money, Carter stated that the "money was never lost, it was tied up. I am just following instructions and it will be released tomorrow regardless." *See* Exhibit D.

40. The following day, July 29, 2011, the money was not released nor did West Coast provide Plaintiff documentation of the wire.

41. To date, despite West Coast's repeated assurances that the Purchase Funds will be disbursed consistent with the unequivocal terms of the Escrow Agreement, Plaintiff Mayer has still not received the Purchase Funds or information about the fulfullment of Defendants' obligations under the Escrow Agreement and Purchase Agreement, respectively.

## COUNT I

### BREACH OF CONTRACT
### (All Defendants)

42. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 41 as though fully set forth in this paragraph 42.

43. The Escrow Agreement and Purchase Agreement are valid and enforceable contractual agreements.

44. Pursuant to Paragraph 1 of the Escrow Agreement, West Coast was required to "act in accordance with and subject to" the terms of the Escrow Agreement.

45. Paragraph 1 of the Escrow Agreement also states that Connelly was to "appoint the Escrow Agent to act in accordance with and subject to the terms of this agreement."

46.     Pursuant to the Paragraph 5 of the Escrow Agreement, West Coast was required to "deliver the Purchase Funds to the Shareholder pursuant to the SPA."

47.     Paragraph 7.4 provides that Connelly "shall do or cause to be done such further acts as the Escrow Agent shall reasonably request to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith."

48.     West Coast Defendants have breached their contractual duties under the Escrow Agreement by failing to deliver the Purchase Funds to Plaintiff Mayer on the Closing Date, or within a reasonable time of the Closing Date.

49.     Moreover, West Coast Defendants have breached their contractual duties by failing to reasonably request further assistance from Connelly to ensure compliance with the Escrow Agreement.

50.     Additionally, Connelly breached its contractual duties under the Escrow Agreement by failing to appoint an Escrow Agent that would act in accordance with the terms of the Agreement.

51.     Connelly also breached its contractual duties by failing to ensure West Coast Defedants' compliance with the Escrow Agreement.

52.     Although Plaintiff deposited her shares pursuant to the terms of the Purchase Agreement, Connelly has not caused, through the Escrow Agrent, the Purchase Funds to be disbursed to Plaintiff.

53.     Plaintiff, for her part, has fully performed as to all material terms in connection with her contractual relationship with the Defendants.

54. As a direct and proximate result of Defendants' material breaches of the Agreements, Plaintiff has suffered damages in an amount to be determined at or before the trial of this matter, which amount exceeds $275,000.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against Defendants awarding damages, in an amount to be determined at trial, suffered by Plaintiff Mayer due to the Defendant' breach of Contract; and such other and further relief as the Court deems just and proper.

## COUNT II

## BREACH OF FIDUCIARY DUTY
### (West Coast Defendants)

55. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 54 as though fully set forth in this paragraph 55.

56. West Coast Defendants owed Plaintiff fiduciary duties, including the duty of care and the duty of loyalty.

57. As an Escrow Agent occupies a confidential relationship with the client by holding and maintaining confidences, West Coast Defendants were required to exercise a high degree of care in the administration and oversight of Purchase Funds for the benefit of Plaintiff.

58. West Coast Defendants breached their fiduciary duties to Plaintiff Mayer by refusing to distribute to Plaintiff the Purchase Funds on the Closing Date consistent with the Escrow Agreement, without explanation and despite acknowledging their obligation to do so.

59. As a result of West Coast Defendants' breach, Plaintiff Mayer has been damaged because she has been deprived of the Purchase Funds due to her under the contract.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against the West Coast Defendants for damages, in an amount to be determined at trial, suffered by Plaintiff Mayer due to West Coast Defendants' breach of their fiduciary duty; and such other and further relief as the Court deems just and proper.

## COUNT III

### FRAUD
### (All Defendants)

60. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 59 as though fully set forth in this paragraph 60.

61. In the creation and execution of the Defendants' Escrow Agreement with Plaintiff, the following misrepresentations were made: (1) Plaintiff would receive her Purchase Funds on the Closing Date pursuant the Purchase and Escrow Agreements; (2) Under the Escrow Agreement, West Coast would deposit the Purchase Funds in Plaintiff's account on the Closing Date; (3) West Coast would provide Plaintiff documentation of the wire with the Purchase Funds; (4) West Coast Defendants' July 28, 2011 statements that they had located the money and that it would be released the following day; (5) West Coast Defendants' statements that the money had only been "tied up." Each of those misrepresentations was material.

62. Defendants had superior knowledge of the true facts; yet, they intentionally, made misrepresentations to mislead and defraud Plaintiff.

63. Defendants made the foregoing misrepresentations with actual knowledge or in reckless disregard for the truth.

64. Plaintiff relied to her detriment on Defendants' misrepresentations. Had Defendants' disclosed the true facts, Plaintiff would not have entered into the Escrow Agreement

and would not have expended a considerable amount of resources to do business with the West Coast Defendants and Connelly, and would not have lost all benefits arising from the Escrow and Purchase Agreements.

65. As a direct and proximate result of the Defendants' fraud, Plaintiff has been damaged in an amount in excess of $275,000 to be proven at trial.

66. Plaintiff is informed and believes and, thereon, alleges that Defendants engaged in the foregoing conduct with the intent to cause injury to Plaintiff and/or with a conscious disregard of the rights of Plaintiff. By reason of their fraudulent acts and omissions, Plaintiff is entitled to an award of punitive and exemplary damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendants for damages, in an amount to be determined at trial, suffered by Mayer due to the Defendant' fraud; for punitive or exemplary damages; and such other and further relief as the Court deems just and proper.

## COUNT IV

### SPECIFIC PERFORMANCE
### (All Defendants)

67. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 66 as though fully set forth in this paragraph 67.

68. The Escrow Agreement constitutes a binding and enforceable contract between the parties.

69. Plaintiff has complied with all terms of the Escrow Agreement sufficient to compel performance by Defendants.

70. Defendants refuse to perform under the terms of the Escrow Agreement even after Plaintiff's requests.

71. Plaintiff has no adequate remedy at law for Defendants' breach of the Escrow Agreement. There is no remedy that is as practical and efficient than a decree of specific performance compelling disbursement of the escrowed Purchase Funds.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendants granting (a) an accounting of the Escrow Funds; (b) the distribution to Plaintiff Mayer of the Purchase Funds; (b) and such other and further relief as the Court deems just and proper.

## COUNT V

### DECLARATORY RELIEF
### (All Defendants)

72. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 71 as though fully repeated in this paragragh 72.

73. As set forth, an actual justiciable controversy has arisen between the parties and now exists between Plaintiff and Defendants regarding their respective rights and duties under the Escrow Agreement and Purchase Agreement based upon, among other things, West Coast's failure and refusal to distribute the Purchase Funds to Plaintiff consistent with the parties' contractual agreements.

74. Plaintiff Mayer seeks a judicial determination of its rights under the Escrow Agreement and Purchsase Agreement that she is entitled to immediate distribution of the Purchase Funds consistent with the parties' contractual agreements.

75. The language of the Escrow Agreement is clear and expressly requires that West Coast release to Plaintiff the Purchase Funds upon the Closing Date.

76. A judicial determination is necessary and appropriate at this time under all the circumstances so that Plaintiff can enjoy the benefits of the parties' unambiguous contractual agreements.

77. Plaintiff Mayer is entitled to a judgment declaring the rights and legal relations between it and Defendants pursuant to 28 U.S.C. § 2201(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants granting a declaratory judgment that Plaintiff Mayer is entitled to the immediate distribution of the Purchase Funds consistent with the terms of the parties' Escrow Agreement and Share Purchase Agreement; and such further relief as the Court considers proper.

## COUNT VI

### CONVERSION
### (West Coast Defendants)
### (In the Alternative)

78. Plaintiff Mayer restates and re-alleges Paragraphs 1 through 77 as though fully repeated in this paragraph 78.

79. In the alternative, Plaintiff seeks the return of the Purchase Funds that rightfully belong to her from West Coast Defendants, who on information and belief are in possession and control of the Purchase Funds which are to be held in the Escrow Account.

80. West Coast Defendants improperly converted Mayer's Purchase Funds for their own use.

81. Plaintiff has demanded the return of her money by way of the distribution of the Purchase Funds.

82.     West Coast Defendants have failed or refused to disburse the Purchase Funds.

WHEREFORE, Plaintiff Mayer respectfully requests that this Court enter judgment in her favor and against Defendants for return of the $275,000 misappropriated by the West Coast Defendants in violation of the Escrow Agreement; and for such other and further relief as this Court deems proper.

## COUNT VII

### RESCISSION
### (All Defendants)
### (In the Alternative)

83.     Plaintiff Mayer restates and re-alleges Paragraphs 1 through 82 as though fully repeated in this paragraph 83.

84.     As demonstrated by the above set forth facts, Plaintiff contends that Defendants expressly and implicitly represented in the Escrow Agreement that they would provide Plaintiff $275,000 in return for the sale of her WFI stock, and that West Coast would serve as the Escrow Agent to deliver the money on the Closing Date.

85.     Defendants expressly and implicitly represented that they would act in good faith to ensure that the Purchase Funds would be promptly deposited in Plaintiff's account on the Closing Date.

86.     Notwithstanding those representations, Plaintiff has not received her money for the sale of stock, despite fulfilling her obligation under the Agreements to deposit the shares in the Escrow Account for Connelly's immediate possession.

87.     Plaintiff further contends that had she known, prior to selling her WFI stock to Connelly and entering into the Escrow Agreement with Defendants, that she would not receive

the Purchase Funds due to her under the Agreements, she would have never entered into the Escrow Agreement or Purchase Agreement in the first place.

88. In failing to act in a manner consistent with the above set forth express and implied representations, Defendants have either negligently or deliberately deceived the Plaintiff, have acted in bad faith, have breached their obligation to deal fairly and have acted in a manner deliberately designed to frustrate Plaintiff's reasonable expectations.

89. As a result of Defendants' wrongful conduct, Plaintiff is entitled to and does seek to rescind her Agreements with Defendants so that she can recover her stock deposited in the Escrow Account.

WHEREFORE, Plaintiff Mayer respectfully requests that this Court enter judgment in her favor and against Defendants (a) rescissinding the Escrow and Purchase Agreement; (b) returning to Plaintiff her 25,000 shares of WFI stock; (c) disgorging any benefit Defendants or their affiliates have received in connection with such shares during the period following the Closing Date; and (d) such other and further relief as this Court deems proper.

**Liora Mayer**

By: s/Donald J. Dahlmann
    Donald J. Dahlmann, One of her attorneys

By: s/James C. Cook with consent
    James C. Cook, One of her attorneys

Donald J. Dahlmann (Illinois Bar No. 00569267)
James C. Cook (Illinois Bar No. 00508373)
**WALKER AND WILLIAMS PC**
4343 West Main Street
Belleville, Illinois 62223
Tel: 618.277.1000
Fax: 618-233-1637
djd@wawpc.net
jcc@wawpc.net

**Of Counsel**

Peter M. Ellis
Steven J. Reynolds
**DLA Piper LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Tel.: 312.368.4000
Fax: 312.236.7516
*Attorneys for Plaintiff*
peter.ellis@dlapiper.com
steven.reynolds@dlapiper.com